# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

# LETTER OPINION

June 9, 2010

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, New Jersey 07065
    (*Attorney for Plaintiff*)

Vernon Norwood
Social Security Administration
26 Federal Plaza
Room 3904
New York, New York 10278
    (*Attorney for Defendant*)

    **RE:**   **Padilla v. Commissioner of Social Security**
           **Civ. No. 09-2897 (WJM)**

Dear Counsel:

    Plaintiff Gabriel Padilla is a fifty year-old man, alleging disability due to back pain and vision problems. (R. 21, 91, 330.) Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying in part his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. On appeal to this Court, Plaintiff contends that the Commissioner's administrative decision disallowing his claim was not supported by substantial evidence and must be reversed or remanded. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.     BACKGROUND**

Plaintiff Padilla was born in Puerto Rico and now resides in Union City, New Jersey. (R. 21, 328.) In his last job, Padilla worked as a helper on a moving truck from January 2002 through March 2002. (R. 76.) Prior to that, Padilla's past work experience included employment as a truck driver, a furniture mover, and a warehouse worker. (R. 76.) Since leaving his last position in 2002 due to back pain, Padilla reports that he spends his days at home and is incapable of performing any housework. (R. 331, 334-35.)

On January 30, 2004, Padilla filed concurrent applications for DIB and SSI, claiming disability due to right eye blindness, left eye vision problems, lower back pain, pain in the knees and feet, and shortness of breath beginning on May 1, 2001. (R. 75-76, 91.) Padilla's claims were denied initially on October 21, 2004 and again upon reconsideration on May 25, 2005. (R. 19.) Following a hearing on January 16, 2007, ALJ Joel H. Friedman found Padilla to be "disabled" as of August 2, 2004, his 45th birthday, but not during the prior period from May 1, 2001 through August 1, 2004.[1] (R. 33.) In April 2009, the Appeals Council affirmed ALJ Friedman's decision. (R. 6-9.) Plaintiff now brings the instant appeal, challenging ALJ Friedman's finding that he was "not disabled" until August 2, 2004.

Since Plaintiff's appeal pertains solely to the period preceding August 2, 2004, this discussion of the facts also will focus on that time frame. During his hearing before ALJ Friedman, Padilla did not identify precisely when his back pain began; instead, he testified that his back injury developed gradually. (R. 330.) The medical evidence in the record shows that Plaintiff had an MRI of his lumbar spine on July 22, 2002, which revealed a herniated disc with thecal sac impingment at L5-S1. (R. 159.) A subsequent report noted this lumbar disc disease and a related prescription for Ibuprofen. (R. 255.) In this April 12, 2004 report, Plaintiff's treating physician, Dr. Faheid, stated that Padilla's back pain grew worse with prolonged standing and walking. (R. 254.) Almost contemperaneously with Dr. Faheid, another physician, Dr. Elamir, opined on April 16, 2004 that Plaintiff's back pain limited his ability to do certain work-related activities, such as stand for more than two hours per day or carry more than 10 pounds at a time. (R. 198.)

---

[1] ALJ Friedman applied the Medical-Vocational Guidelines at Step Five and determined that prior to Plaintiff Padilla's 45th birthday, he qualified as a "Younger individual age 18-44." As such, the ALJ found that Rule 201.23 was applicable, and that this rule required a finding of "not disabled." Once Plaintiff Padilla turned 45, however, the ALJ determined that Rule 201.17 applied, as Padilla was now a "Younger individual age 45-49." Under Rule 201.17, Padilla qualified as "disabled." (R. 31-33.)

During this time, the medical records reveal that Plaintiff was seeking treatment for vision problems. After cataract surgery on his right eye in November 2002, Plainitff continued to see an ophthalmologist complaining of darkening vision in that eye. (R. 179-186.) This ophthalmologist, Dr. Higgins, diagnosed optic nerve pallor and some dimming of Padilla's right eye vision. (R. 181.) A subsequent neuro-ophthalmalogical evaluation confirmed Plaintiff's right optic neuropathy. Further, Plaintiff's vision was assessed during this June 10, 2003 evaluation to be 20/60 in his right eye and 20/20 in his left eye. (R. 169.) Following these evaluations, Plaintiff continued to see various eye specialists for follow-up appointments. In their reports regarding Padilla's eye pain and alleged visual difficulties, each of these doctors noted that Plaintiff's left eye vision was 20/20 and that his right eye was no worse than 20/100. (R. 162, 164, 194, 226.) On June 2, 2004, Dr. Kaur, a consultive physician, noted that Plaintiff's vision was 20/20 in both eyes without glasses. (R. 226.) While Plaintiff's visual acuity was not markedly affected, one doctor noted that Plaintiff had a diminished visual field as well as diminishing depth perception in his right eye. (R. 275.) As such, this doctor recommended that Plaintiff not work at unprotected heights or with dangerous machinery. (R. 275, 276.)

Plaintiff Padilla now challenges ALJ Friedman's determination that he was "not disabled" from May 1, 2001 through August 1, 2004. In the instant appeal, Plaintiff alleges the following errors: (1) that the ALJ failed to find that Padilla suffered a severe mental impairment prior to October 2004; (2) that the ALJ did not analyze a combination of severe impairments at Step Three of the sequential analysis; and (3) that the hypothetical posed to the vocational expert at the hearing was insufficiently specific. Each of these challenges will be addressed in turn.

## II.     DISCUSSION

### A.     Standard of Review

For the purpose of this appeal, the court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir.1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir.2000). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir.2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

B.  The Five-Step Sequential Analysis

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the Commissioner inquires in step three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

C.  Step Two – Existence of a Severe Mental Impairment Prior to October 2004

At Step Two, ALJ Friedman determined that Padilla suffered from the following severe impairments: (1) glaucoma/bilateral optic neuropathy, right worse than left; (2) photophobia; (3) lumbar degenerative disc disease; (4) borderline intellectual functioning; and (5) as of October 2004, depression. Plaintiff takes issue with the date attached to the final severe impairment, depression. Padilla alleges that the ALJ erred by failing to call a "psychiatric medical advisor" to determine an onset date for Padilla's alleged depression. (Pl.'s Br. 27.) The Court disagrees.

ALJ Friedman was correct in noting that the first evidence of a psychiatric impairment in Padilla's medical record appeared in an October 2004 report by a Dr. Ernesto Perdomo. (R. 237-241.) Prior to Dr. Perdomo's assessment that Padilla suffered from "recurrent major depression" and near-daily panic attacks, there was no such diagnosis in the many medical reports submitted. In fact, just months before, Padilla informed Dr. Jaspreet Kaur that his anxiety was "much improved" without medication. (R. 224.)

As noted above, the burden lies with the claimant at Step Two to demonstrate that he has a "medically severe impairment." *See Branco v. Comm'r of Soc. Sec.*, Civ. No.

4

08-784, 2009 WL 2058866, at *4 (D.N.J. Jul. 8, 2009) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Here, Plaintiff did not satisfy this burden. To the extent that Plaintiff deemed his depression to be a "severe impairment" prior to Dr. Perdomo's assessment, he was required to provide or at least point to evidence in the record supporting this assertion. He has failed to do so.

Further undermining his contention at Step Two is the fact that Padilla never listed depression on his disability report. Instead, when asked to detail those conditions limiting his ability to work, Plaintiff included a lengthy list – ranging from back problems to glaucoma to a lung problem – but did not include depression. R. 75; *see Hicks v. Astrue*, 2010 WL 1816356, at *3 n.3 (W.D.Pa. May 4, 2010) ("Plaintiff's severity argument is further undermined by the fact that she completed a disability report on which she indicated that fibromyalgia is the only condition that limits her ability to work, not the laundry list of other impairments that she now claims are severe."). Further, when asked by ALJ Friedman to describe why he has been unable to work since May 2001, Padilla discussed his back pain and his vision problems only, with no mention of depression. (R. 330.)

Even if Padilla had discussed his depression on his disability report or as part of his self-described list of impairments, the Court would find no error in ALJ Friedman's failure to call a "psychiatric medical advisor." While Padilla maintains that his depression was a "slowly progressing disease" that existed well before Dr. Perdomo's diagnosis in October 2004, *see* Pl.'s Br. 27, such an allegation is not enough on its face to warrant the appointment of a psychiatric medical advisor. In *Walton v. Halter*, the Third Circuit held that an ALJ must call upon the services of a medical advisor not simply where the alleged impairment was alleged to be slowly progressing, but also where the alleged onset date was far in the past, and adequate medical records for the most relevant period were unavailable. 243 F.3d 703, 709 (3d Cir. 2001); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 n.7 (3d Cir. 2003). Here, Plaintiff does not contend that adequate medical records during the relevant period are unavailable or conflicting, nor does he allege an onset date far in the past. As such, the ALJ's failure to call this psychiatric advisor was not erroneous, and Plantiff's argument for remand is unavailing.

    D.    <u>Step Three – Consideration of Plaintiff's Impairments in Combination</u>

Plaintiff's next argument is that the ALJ failed to properly analyze whether his impairments met or equaled one of the Listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. While Plaintiff appears to agree with the ALJ that none of his impairments on their own are of listing-level severity, Plaintiff argues that this matter should be remanded to require the ALJ to consider his impairments in combination. Plaintiff considers it unreasonable that his "'near miss' of meeting the vision Listings, the

orthopedic Listings and the mental retardation Listings [were] never combined to determine whether as a medical whole, [they were] the medical equivalent of the Commissioner's listings." (Pl.'s Br. 23).

Despite his urging that these impairments are the medical equivalent of the Commissioner's listings, Plaintiff never specifies how so. *See Cosby v. Comm'r of Soc. Sec.*, 231 Fed. Appx. 140, 146 (3d Cir. 2007) (affirming denial of Plaintiff's appeal where she failed to "argue or even suggest which listing the ALJ should have applied, nor [did] she point to any medical evidence ignored by the ALJ that would show that Ashley's impairments medically equaled one of the listings."). Again, Plaintiff points to no specific medical evidence and offers nothing beyond argument to demonstrate how these "near misses" set forth medical equivalence. Plaintiff instead states: "When the ALJ combines plaintiff's vision problems with his chronic back pain and disc disease and his borderline intellectual functioning a medical equivalence is established." (Pl.'s Br. 24.); *see also Rivera v. Comm'r of Soc. Sec.*, 164 Fed. Appx. 260, 262 (3d Cir. 2006) ("The claimant must provide sufficient medical evidence in step three to show that her impairment is equal in severity to a listed impairment, but need not identify the relevant listings.") (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)). Here, the ALJ engaged in a lengthy colloquy with a medical expert, Dr. Hein, in which he asked the doctor to opine on whether Plaintiff's impairments in combination met or were medically equivalent to any listing. (R. 337-339.) Dr. Hein answered no. (*Id.*) While Plaintiff disagrees with the ALJ, there appears to be substantial evidence, particularly in light of Dr. Hein's testimony, to support the ALJ's determination that the so-called "near misses" do not equal a listing-level impairment. Plaintiff offers nothing specific to undermine the validity of this testimony.

In addition, after review of ALJ Friedman's decision as a whole, the Court finds that there was sufficient development of the record and explanation of findings at Step Three to allow for meaningful review, as required under *Burnett*. *See Burnett*, 220 F.3d at 120. *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Instead, the Third Circuit has counseled the district courts to look at the decision as a whole to determine whether the ALJ considered the appropriate factors at Step Three. *Id.* Here, ALJ's careful analysis of the medical evidence in light of the vision, orthopaedic, and mental disability listings was comprehensive enough for meaningful review. ALJ Friedman considered Plaintiff's lower back pain and the record evidence demonstrating Plaintiff's lack of muscle weakness and reflex loss. (R. 28.) Further, the ALJ discussed Plaintiff's left eye vision and right eye deficiencies. (R. 28.) The ALJ also noted Plaintiff's IQ scores and semi-skilled work history, in finding that he did not meet Listing 12.05.

The instant ALJ findings stand in stark contrast to the decision in *Burnett*, in which the ALJ failed to mention any of the specific impairments considered in reaching the determination that Plaintiff's injuries did not equal any of the listings. *Id.* at 117 (finding the ALJ's conclusory one-sentence Step Three determination "hopelessly inadequate"). In the instant case, ALJ Friedman carefully elucidated the evidentiary bases for his Listings determinations, citing to the medical evidence in the record.[2] To hold otherwise would be to elevate form over substance, doing precisely what the Third Circuit counseled against in *Jones*, that is to force the ALJ to use particular language or a rigid format in his analysis.

E.  Step Five – Adequacy of the Hypothetical Posed to the Vocational Expert

Finally, Plaintiff contends that the testimony of the vocational expert ("VE"), and the ALJ's subsequent Step Five determination, are not supported by substantial evidence, due to wording of the hypothetical question posed. Specifically, Padilla contends that the use of the phrase "simple, routine repetitive jobs in a low stress setting" in the hypothetical failed to adequately incorporate Plaintiff's mental limitations.[3]

---

[2] Further, ALJ Friedman's analysis in the instant case is far more comprehensive than that considered by the Third Circuit in *Torres v. Commissioner*, 279 Fed. Appx. 149 (3d Cir. 2008). In *Torres*, the ALJ made a cursory finding at Steps Two and Three, consisting of the following:
> Regarding steps two and three, the evidence establishes the existence of a "severe" impairment involving left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis, and depression, but does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4.

*Id.* at 152. The Circuit found this analysis to be "conclusory and inadequate" and "beyond meaningful judicial review." *Id.* That is plainly not the type of analysis put forth by ALJ Friedman here.

[3] The full hypothetical consisted of the following:
> If you were to assume for a moment an individual of the claimant's age, and he is currently over 45 ... Assume for the moment that I found him capable of performing the exertional demands of light work with the restrictions that he would, first of all be limited although he could ... occasionally lift 20 pounds, and frequently could lift 10 pounds, but he could stand and walk no more than four hours in an eight hour day. He could never climb ladders and ropes and scaffolds. He could occasionally do other postural activities. He would have to avoid basically all hazards such as, first of all, driving, dangerous machinery, or unprotected heights. He would be as the medical expert testified, a person who basically has one eye he can use. He would have limited depth perception, and limited peripheral vision. ... [H]e would also have the light sensitivity such that in a situation with ordinary lighting, room lighting like we have today, he would basically have the sensitivity and have to wear glasses. And also due to depression he would be limited to simple, routine repetitive jobs in a low stress setting.
> (R. 345-46.)

7

A hypothetical question posed to a VE "must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, Plaintiff points to no evidence in the record – let along credibly established evidence – demonstrating that he had any significant mental limitations prior to August 2, 2004. Plaintiff instead refers to a report prepared by Dr. Perdomo on October 20, 2004, in which the doctor states that Padilla's thought process was "organized and focused" but that his intellectual functioning was "borderline." (R. 240.) This evaluation, while informative, was conducted after August 2004. As such, the Court cannot find that there was record evidence showing mental limitations prior to August 2, 2004.

Assuming for the sake of argument, however, that Dr. Perdomo's evaluation had occurred before Padilla's 45th birthday, the phrase "simple, routine repetitive jobs in a low stress setting" would have been adequate, as it appears to properly reflect Plaintiff's difficulties in maintaining concentration and pace. Dr. Perdomo states that Plaintiff spoke "coherently and relevantly" but that his concentration appeared "impaired." (R. 239-40.) In support of this, Perdomo notes that Padilla was able to follow the interview but was "not able to give serial 3's or serial 7's (100 minus 3 or 100 minus 7 serially), possibly due to math skills.)." (R. at 240.) Further, Padilla's long-term memory was deemed "fair," while his short-term memory was "impaired," due to inability to repeat more than three of five words immediately after they were given to him. (R. at 239.) The phrase "simple, routine repetitive jobs in a low stress setting" has been held to incorporate these limitations. *See Najmi-Nejad v. Barnhart*, 75 Fed. Appx. 60, 64 (3d Cir. 2003) (noting that phrase "simple routine work" encompasses difficulties in "concentration, persistence, or pace"); *see also McDonald v. Astrue*, 293 Fed. Appx. 941, 946 (3d Cir. 2008) (same). Thus, the hypothetical adequately reflected Padilla's impairments, and as such, the VE's testimony constituted substantial evidence supporting a finding of no disability prior to August 2, 2004.

### III. CONCLUSION

For the foregoing reasons, the Commissoner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**